# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| NICOLE L. STOLARZ-SPEJEWSKI,  )<br>       Plaintiff,  )<br>  )<br>     v.  )<br>  )<br>CAROLYN W. COLVIN, Acting  )<br>Commissioner of the Social Security  )<br>Administration,  )<br>       Defendant.  )  | Cause No.: 2:13-CV-422-PRC |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Nicole L. Stolarz-Spejewski on November 19, 2013, and Plaintiff's Opening Brief [DE 26], filed on January 19, 2015. This matter became fully briefed on March 16, 2015. Plaintiff challenges the Social Security Administration's determination that she is not disabled under the Social Security Act, asking that the Court remand this case for further consideration or simply order an award of benefits.

## I. Background

Plaintiff has a long history of back pain and scoliosis. She underwent a spinal fusion surgery in 2000, at age twelve. This controlled her scoliosis for a time. But starting around 2009, she began having increased pain in her back as well as in her neck. She also suffered from intense headaches. Medical examinations revealed that rods that had been surgically placed in her back nearly a decade earlier had broken and that her spine had twisted. An MRI also revealed that the normal curvature of her neck had straightened out somewhat. In December 2010, Plaintiff underwent a pair of back surgeries that fused parts of her thoracic spine and removed the broken rods.

In later follow-up examinations, she reported that her back pain had improved and that she could sit for up to three hours at a time, but she complained that her neck pain had not gotten any

better. She eventually inquired about undergoing acupuncture to treat her neck pain and headaches, complaining that she suffered from migraines associated with nausea and that these lasted between six hours and two days. This led to a diagnosis of post-surgical migraines and chronic neck pain.

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income in August 2010, alleging that she had been disabled since February 2010 due to scoliosis. The agency denied her application initially, in November 2010, and upon reconsideration, in March 2011. Plaintiff then asked for a hearing before an Administrative Law Judge (ALJ), which took place on May 17, 2012, before ALJ Henry Kramzyk. The ALJ heard testimony from Plaintiff, who was represented by counsel at the hearing, as well as from Plaintiff's mother and Vocational Expert Leonard Fisher. The ALJ issued a written decision denying benefits on June 22, 2012, making the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2011.

2. The claimant has not engaged in substantial gainful activity since February 23, 2010, the alleged onset date.

3. The claimant has the following severe impairments: status post thoracic spine surgery; degenerative disc disease of the thoracic and lumbar spines; scoliosis; migraine headaches secondary to cervical kyphosis; and obesity.

4. The claimant does not have an impairment or combination of impairments that meets or medially equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift/carry and push/pull 10 pounds occasionally and less weights frequently; sit for a total of 6 hours a day; and stand and/or walk for 2 hours a day. She can never climb ladders, ropes, or scaffolds, but can occasionally climb ramps

|   |   |   |
|---|---|---|
|   |   | and stairs, balance, stoop, and crouch. She can never kneel or crawl. |
|   | 6. | The claimant has no past relevant work. |
|   | 7. | The claimant was born in 1988 and was 21 years old, which is defined as a younger individual age 18–44, on the alleged onset date. |
|   | 8. | The claimant has a limited education and is able to communicate in English. |
|   | 9. | Transferability of job skills is not an issue because the claimant does not have past relevant work. |
|   | 10. | Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. |
|   | 11. | The claimant has not been under a disability as defined in the Social Security Act, from February 23, 2010, through the date of this decision. |

(AR 24–31).

In evaluating the evidence, the ALJ gave great weight to the opinion of Dr. J. Sands, a state-agency medical consultant, explaining that it indicated that Plaintiff was able to perform a limited range of sedentary work. Dr. Sands's opinion was issued in November 2010—before Plaintiff's December 2010 back surgeries. And his evaluation did not discuss Plaintiff's headaches or neck pain.

The ALJ nevertheless concluded that Dr. Sands's opinion was consistent with later medical records, noting that it was affirmed by a second state agency medical consultant, Dr. A. Dobson, on March 28, 2011, and that the record did not contain any opinions from any treating or examining source that exceeded the ALJ's ultimate findings regarding Plaintiff's residual functional capacity

(RFC).

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981. On November 19, 2013, Plaintiff filed this civil action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of the Agency's decision.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## II. Standard of Review

The Social Security Act authorizes judicial review of the final decision of the Agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the

question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734–35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that [a reviewing court] may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

### III. Disability Standard

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent her from doing her previous work, but considering her age, education, and work experience, it must also prevent her from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's RFC, age, education, and experience? If yes, then the claimant is not disabled, and the claim is

denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699–700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite her limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## IV. Analysis

### A. Headaches

Plaintiff contends that the ALJ failed to adequately explain how her migraine headaches impaired her. The point is well taken. The ALJ found at Step Two that migraine headaches secondary to cervical kyphosis constituted a severe impairment. A severe impairment, by definition, "significantly limits an individual's physical or mental abilities to do basic work activities." SSR 06-3p, 1996 WL 374181, at *1 (Jul. 2, 1996). The ALJ noted at Step Two that his reasons for concluding that some of Plaintiff's ailments—including her headaches—constituted severe impairments would become "clear from the discussion of her residual functional capacity later in this decision." (AR 25). But that discussion, though it mentioned headaches at points and apparently considered them to be less severe than alleged by Plaintiff, did not explain how the headaches limited her ability to work. And the RFC finding, which consisted solely of postural limitations, provided no obvious accommodation for severe headaches.

7

The Seventh Circuit Court of Appeals recently remanded a case for a similar failure. *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014). The *Moon* court explained that "the ALJ's analysis of the evidence related to Moon's migraines [was] not logically connected to his determination of her residual functional capacity. He found at step two that her headaches were part of a severe combination of impairments. At step four, though, he seemed to imply that she did not actually suffer migraines . . . despite the undisputed record of years of treatment for migraines." *Id.* at 721.

It might be argued that no further explanation was required in this case in light of the ALJ's conclusion that Plaintiff was not fully credible as well as his heavy reliance on Dr. Sands's opinion evidence. It is true that the ALJ found Plaintiff's subjective complaints, including those about her headaches, to be exaggerated. But this fact alone does not explain how he got from a finding that headaches had a significant impact on Plaintiff's ability to do basic work activities to an RFC determination that does not appear to provide any accommodation for headaches. Indeed, the ALJ never explained how frequent or how severe he thought the headaches actually were, much less how the headaches affected Plaintiff's RFC.

Appeal to the opinion evidence of Dr. Sands is equally unavailing. To begin with, the record is rather thin with respect to medical opinion evidence. In fact, neither the ALJ's decision nor the briefs before the Court point to any medical opinion evidence aside from Dr. Sands's RFC form and Dr. Dobson's very brief opinion affirming Dr. Sands's conclusions. Plaintiff has the burden to present evidence, it is true, but the ALJ must also develop the record and re-contact experts if warranted. *See Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009). That Dr. Sands's opinion was given before Plaintiff underwent two major surgeries suggests that other opinion evidence from after the surgeries would have been useful, especially since the great majority of medical records

8

regarding headaches came about after those surgeries.

Even if the ALJ was justified in relying on Dr. Sands's opinion evidence, that opinion sheds little light on the logical connection between the ALJ's finding that headaches were a severe impairment and his RFC determination. *Moon* is again illustrative. *See Moon*, 763 F.3d at 722. The court explained that the ALJ's reliance on the opinions of state agency consulting physicians did not relieve him of his "obligation to account for the migraines" because those opinions themselves failed to provide a logical bridge between the Step Two finding and the RFC determination. *Id.* The first opinion did not "actually specify how Moon's migraines relate[d] to the" RFC; and the second simply said that there was not enough information about the frequency of her migraines to determine how much they contributed to Moon's functional limitations. *Id.* at 722–23; *see also* SSR 96-6p, 1996 WL 374180, at *2 (Jul. 2, 1996). The situation here is even worse since Dr. Sands did not even mention headaches or neck pain.

The Commissioner's numerous appeals to records that include no complaints of headaches are likewise ineffective. Not only do such appeals violate the *Chenery* doctrine, since the ALJ did not support his decision by looking to instances where Plaintiff did not complain of headaches, they also do not bridge the gap between the ALJ's finding that headaches were a severe impairment and his RFC determination. *Kastner v. Astrue*, 697 F.3d 642, 648 (7th Cir. 2012) ("[T]he Commissioner's lawyers cannot defend the agency's decision on grounds that the agency itself did not embrace." (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87–88 (1943); *Parker v. Astrue*, 587 F.3d 920, 922 (7th Cir. 2010)).

None of this is to say that Plaintiff's headaches should have been found to be a severe impairment at Step Two or that they limit Plaintiff more than laid out in the ALJ's RFC

determination. Rather, the problem is that the ALJ failed to provide a logical bridge connecting the Step Two finding to his RFC determination. This matter must therefore be remanded for further proceedings before the Agency. Moreover, in light of the lack of medical opinion evidence regarding headaches, the Agency should also procure new medical opinion evidence on remand relating to Plaintiff's condition following her 2010 back surgeries.

### B. Comorbidity of Impairments

Plaintiff also contends that the ALJ failed to consider the comorbidity of her impairments, specifically the mild impairments of nasal polyps and sinusitis. She argues that the ALJ's conclusion that medication seemed to keep her nasal problems "generally under control" was not supported by the record. (AR 25). She points out that she had continued difficulties with recurring sinusitis and nasal polyps despite surgical intervention. She also reported that her nose issues were one of the reasons she called off work so often, which eventually led to her termination. Further, Dr. Sands did not discuss these impairments, and Plaintiff contends that the ALJ was hence playing doctor in concluding that the nasal problems were generally under control.

ALJs must consider the aggregate effect of all of a claimant's ailments, including those that by themselves are not severe. *See Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003); 20 C.F.R. § 404.1523. As mentioned above, the medical opinion evidence in this case is quite thin, and the Court has directed the Agency to procure new medical opinion evidence on remand. Thus—regardless of whether the ALJ's brief explanation would, on its own, warrant remand—a fuller analysis of Plaintiff's nasal problems and the limitations imposed by them (if any) is warranted on remand.

## C. Credibility

Plaintiff's opening brief also suggests at points that the ALJ failed to properly evaluate her credibility. Credibility determinations should only be reversed if they are "patently wrong." *Shideler v. Astrue*, 688 F.3d 306, 310–11 (7th Cir. 2012) (quoting *Skarbek v. Barnhart*, 390 F.3d 500, 504–05(7th Cir. 2004)). Here, the ALJ provided a detailed discussion of Plaintiff's subjective complaints and her activities of daily living (including her limitations in performing those activities). He also discussed her medical records and treatment history, noting that there were inconsistencies between what she had told her doctors and what she testified to at the hearing. Moreover, he also noted that her hearing testimony was internally inconsistent, as she had testified that she had not been on any vacations in the last couple of years, but then later testified that she had, a few years back, gone on a five-day trip to Florida with a friend. As a result, he found her credible only to the extent that her testimony was consistent with his RFC determination.

As she clarifies in her reply brief, Plaintiff thinks that the ALJ gave too much weight to her activities of daily living. While the Seventh Circuit Court of Appeals has warned ALJs not to read too much into a claimant's activities of daily living, ALJs are nevertheless required to consider these activities in evaluating credibility. *Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004). As mentioned, the ALJ considered the activities Plaintiff could do as well how these activities were limited by her impairments. He concluded that these activities—including personal care, grocery shopping once per week, folding and putting away laundry, dusting, cooking small meals, reading, and computer use—suggested a greater functional capacity than she had testified to at the hearing. This, along with other inconsistencies, led him to conclude that she was not fully credible. The ALJ did find Plaintiff to be limited in many respects, and the Court sees no error in the ALJ's

11

consideration of Plaintiff's activities of daily living, especially since the credibility assessment was bolstered by discussion of other factors.

Further, though the credibility assessment is as a whole quite thorough, the Court is concerned that the ALJ might have misinterpreted Plaintiff's testimony about her ability to sit. He explained that she testified that she could only sit for fifteen to twenty minutes at a time, but this isn't quite right. Rather, she explained that she had to change positions when seated every fifteen to twenty minutes, and it seems likely in context that the change of positions she was testifying about involved fidgeting and changing *how* she was seated. The Court is deferential to credibility determinations, and the ALJ's analysis was not patently wrong. But as this case is being reversed on other grounds, clarification of this issue is warranted on remand. Of course, the introduction of new medical evidence and a corrected RFC discussion may well change the credibility analysis in other ways, but that determination belongs to the Agency on remand.

### D. Request for an Award of Benefits

An award of benefits is appropriate "only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." *Allord v. Astrue*, 631 F.3d, 415 (7th Cir. 2011) (citing *Briscoe*, 425 F.3d at 356). As is evident from the discussion above, remand, not an immediate award of benefits, is required.

### V. Conclusion

Based on the foregoing, the Court **GRANTS** the relief sought in Plaintiff's Opening Brief [DE 26], **REVERSES** the final decision of the Commissioner of Social Security, and **REMANDS** this matter for further proceedings consistent with this Opinion and Order.

SO ORDERED this 30th day of March, 2015.

                                                    s/ Paul R. Cherry
                                                  MAGISTRATE JUDGE PAUL R. CHERRY
                                                  UNITED STATES DISTRICT COURT

cc:     All counsel of record